## J. B. ASPELL ET AL. v. JOB SMITH.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 10, 1889.
Re-argued March 27, 1890—Decided April 7, 1890.
[To be reported.]

1. When, in an action for libel contained in a letter, the plaintiff testified that she was familiar with the defendant's handwriting and that the letter was his, and it was identified as defendant's letter by the person to whom it was addressed and admitted by the defendant to have been written by him, an objection to the sufficiency of the proofs cannot be sustained.
2. In such action, when the libel complained of was contained entirely in the letter which was complete in itself, the envelope in which the letter was sent containing no part of the alleged libel, it was of no importance that the latter was admitted in evidence along with the letter without sufficient proof of its authenticity; the error, if any, was harmless.
3. A specification alleging that the "judge erred in his charge to the jury that the letter was on its face per se libelous," is not supported by a bill of exceptions which shows that the court did not so charge; moreover, being violative of Rule XXIII., the question whether the letter was libelous per se was not raised by the specification.

Argued before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.; re-argued before a full bench.

No. 210 January Term 1889, Sup. Ct.; court below, No. 213 December Term 1886, C. P. No. 3.

To the number and term in the court below, Joseph B. As-

Statement of Facts.

pell and Catharine Aspell, his wife, brought an action against Job Smith to recover damages for a libel charged to have been published by the defendant of and concerning the said Catharine Aspell. The plaintiffs subsequently filed a statement of claim, setting out, as the libel complained of, a letter over the defendant's name and alleged to have been written by the defendant to one Orton, then engaged in selling cough drops in Pittsburgh, and which was in part as follows:

" You, having now been selling for the (so called) widow of my late partner since the early part of November, you have had a good chance to know how you like your new departure.

" During the winter of 1885 we gave our agents here 41 packages of cough for one dollar. In the summer I sent you (I think) five dollars being your share up to date of that extra package. You wrote me expressive of your gratitude for the same, although you would never have been any wiser had I not told you and I should have been the gainer. But in that case I was MAN enough to do the right thing and serve you as well as the agents here are served which I think is only right, more expressly as you have extra expenses to meet by way of freight, &c. In the fall of 1885 the woman who called herself widow opened up in opposition to me the legitimate successor of the firm of Smith & Lewis. And as I was giving 41 packages for the dollar, she gave 42; finding she still meant opposition, she wrote you and it pleased you to transfer your patronage to her. I wrote you and in answer you wrote to say I was not MAN enough for this and that, not to make restitution for all your little complaints considering the many dollars I had saved you as Lewis would never have exerted himself to do. I thought that one word that crept into your letter was quite unwarranted. Although I admit that it was wrote by a more scholarly hand than yours. However I have not wrote this to scold or to be sarcastic, but only to ask you if the so-called widow has been WOMAN enough to be giving you 50 packages for one dollar the same as she has and IS giving the men who sell for her here. Mind you, this cut in price is not paying much, but as she began to cut giving 42, I give 50 packages and my next rise will be proportionate.

" Now if she has not been giving you 50 packages or 42 see if you find her WOMAN enough to give you the difference in

a bonus at the end of the season, if she does it will be the first and only honorable act of her life, I ever knew her to perform, if she does make restitution you will be entitled to about 2500 packages from early November up to date. . . . ."

—The statement of claim, after copying the foregoing letter, continued:

" Plaintiff avers that the innuendoes contained in said libel are, that in writing of plaintiff as the 'so-called' widow the defendant intended to convey that plaintiff was never married to her deceased husband, but was merely his mistress; and in calling her a ' daisy,' that she was and is a common woman or prostitute; that in writing 'it will be the first and only honorable act of her life,' he desired it to be inferred that she was and is dishonest in her dealings in business; and the purpose of the letter which was mailed to said Orton was to entice him from plaintiff's service, and the cause of its venom is set forth and shown wherein defendant says 'the woman who calls herself widow opened up in opposition to me the legitimate successor of the firm of Smith & Lewis.' "

Issue having been joined, at the trial on October 31, 1888, Catharine Aspell, being sworn on her own behalf, testified that she was the wife of George Lewis, who died in 1885, and in his lifetime was the partner of the defendant under the name of Lewis & Smith, in the confectionery business; that after his death there was an auction sale of the goods in the store ; that in June, 1885, the witness opened a store herself and carried on business in opposition to Smith in the manufacture of cough drops, advertising as the widow of George Lewis; that on September 20, 1886, she was married to her present husband; that she continued to carry on the business, and her cough drops still bore the name of Mrs. George Lewis ; and that some suits between the defendant and herself about the trade mark of said cough drops, were still pending.   The letter upon which the action was based being shown to the witness, she testified that it was in the defendant's handwriting, with which she was familiar; that it was in the same handwriting in which the defendant used to write to the witness's husband; that some nine or ten years ago, when he lived with her husband and herself, she had seen the defendant write letters at her house, but she never examined the letters.   Other witnesses for the plaintiffs

Charge of Court below.

testified that Mrs. Aspell had been married to George Lewis and that her reputation was good.

The plaintiffs then offered in evidence "the letter dated February 10, 1886, identified by witness, Orton, and the envelope."

Objected to by defendant.

By the court: Objection overruled; offer admitted, exception.[1] [2]

The defendant testified, in his own behalf, that after the death of George Lewis, the plaintiff solicited business as his widow, and that she was called Daisy dozens of times both by her husband and by the witness. Being shown the letter offered in evidence by the plaintiffs, the defendant testified in regard to it as follows: " I meant by the expression in that letter, 'it will be the first and only honorable act I ever knew her to perform,' just what I said. It is the truth."

At the conclusion of the testimony the court, FINLETTER, P. J., charged the jury as follows:

" It is for you to determine from the letter what the writer intended by the language. If you determine he intended to reflect on her character; to intimate that the plaintiff was dishonest, or dishonorable, or indecent, then the paper is libelous, and it is your duty to find it so. Then your duty is to assess the damages. It is your duty to consider on the question of damages all the circumstances, and the relations the parties occupied. It is your business to render a fair and reasonable verdict as to damages. The plaintiff is not required to show special damage or injury. It may not be possible in any case to show special injury. When the paper is libelous, then damage necessarily flows from it. The jury must take into consideration all the circumstances of the parties, and find accordingly."

The jury rendered a verdict for the plaintiffs for $825. A rule for a new trial was discharged upon the plaintiffs' remitting all the verdict in excess of $500, and judgment for that amount was entered on the verdict. Thereupon the defendant took this appeal, specifying that the court erred:

1. " In admitting as evidence the alleged libelous letter dated February 10, 1886, the handwriting and execution thereof by defendant not having been proven." [1]

Arguments.

2. " In admitting as evidence the envelope alleged to have contained the alleged libelous letter of February 10, 1886, the handwriting, execution and sending thereof not having been proven." 2

3. "In his charge to the jury, that the letter was on its face, per se, libelous."

The cause was argued in the Supreme Court on April 10, 1889, and on January 6, 1890, a re-argument was ordered, particular attention being called to the question " whether the words, ' so-called widow,' are actionable per se, without proof of special damage."

*Mr. Francis Shunk Brown* (with him *Mr. Hector T. Fenton*), for the appellant:

1. The only witness to prove the defendant's handwriting was the plaintiff, Catharine Aspell, and, as she had never seen him write, that is, never overlooked in the operation, although she had seen him while in the act of writing, and had never seen any letters or other papers purporting to be in his handwriting and afterwards communicated with him concerning them or acted upon them, she had not sufficient knowledge to make the letter admissible on the strength of her opinion that the defendant wrote it: 1 Greenl. Ev., § 577. It may be argued that the error in admitting it was cured by the defendant's testimony that he wrote it. But the defendant was put upon a defence to which he ought not to have been subjected. The plaintiff must prove her case, and the admission of improper evidence is not cured by after testimony. The same argument applies to the envelope containing the letter.

2. The only words alleged to be libelous are those referring to the plaintiff as " Daisy," and the " so-called widow," and the statement that " if she does, it will be the first and only honorable act of her life," etc. The testimony shows that Smith had often called Mrs. Aspell, Daisy, which is a nickname, much oftener used as a name of endearment than anything else, and it is also a proper name. It has no such meaning as alleged by the plaintiffs, and there was no evidence that it was so intended. The defendant did not write that Mrs. Aspell never did an honorable act, but simply said: " If she does, it will be the first and only honorable act of her life I ever knew

Arguments.

her to perform;" and he justifies this statement as the truth. It must be remembered that the letter was written to a man who had been a customer of Smith, and who was induced by Mrs. Aspell to leave him and come to her with his trade.

3. Mrs. Aspell advertised and sold cough drops as the widow of George Lewis and continued to do so after she married Aspell. Advertising herself as a widow, when she was the wife of Aspell, and using an alleged widowhood as a means of destroying the defendant's business, why should she complain of his referring to her as the so-called widow? Even if she had not re-married, those words are not actionable per se, and are without a single element of libel. She was a so-called widow, so called by herself when she was not a widow. There is no evidence that Smith intended the slightest disrespect to her, either by the word Daisy or by the phrase "the so-called widow;" nor is there evidence that she sustained any actual damage from this letter, and, as the words used are not libelous per se, she cannot recover without proof of actual damage. The verdict was clearly against the law and the evidence.

*Mr. Frank P. Prichard*, for the appellee:

1. The appellant's counsel have forgotten the distinction between libel and slander. A libel need not charge a person with the commission of a crime or cause special damage; it is sufficient if it be injurious to the character of another and necessarily injures his reputation: McCorkle v. Binns, 5 Binn. 352; O'Brien v. Clement, 15 M. & W. 435; Townshend on S. & L., §§ 166, note 5, 176, 177; Odgers on L. & S., 2, 22; Newell on Defamation, 46. Where, either in themselves or taken in connection with the surrounding circumstances, the meaning of the words is doubtful, the plaintiff may aver their meaning by innuendo, and it is for the jury to say whether they were used in the defamatory sense: Hays v. Brierly, 4 W. 393; Vanderlip v. Roe, 23 Pa. 82; Pittock v. O'Niell, 63 Pa. 258; Commonwealth v. Keenan, 67 Pa. 203; Townshend on S. & L., §§ 28, 143.

2. When the words, in themselves, or with the innuendo, are libelous, substantial damage is inferred and need not be proved: Odgers on L. & S., 290, 308; Newell on Defamation, 839, 856; Neeb v. Hope, 111 Pa. 145. In the present case the

whole letter was claimed to be libelous, although three phrases were specially complained of. The natural and ordinary meaning of the words "so-called widow" is, that while the plaintiff was called a widow she was not so in reality, and when that phrase is applied to a woman who had been living in apparent marital relations with a man for many years before his death, and had children by him, it could only mean, in the common acceptation of the language, that she had been his mistress and therefore was not his widow. It must be remembered that at the time the letter was written the plaintiff had not married again, and was still bearing the name of her deceased husband.

3. Even if there had been no innuendo, it would have been the duty of the court, either to say that the words "so-called widow" were libelous, as injurious to the social character of the plaintiff and as tending to degrade her character, or, at best, to say that they were ambiguous, and leave it to the jury in what sense they were used. But there was an innuendo, the truth of which was for the jury, and the repetition and emphasis of the words, in connection with the general tone and evident purpose of the letter, sufficiently showed that the words were used in a derogatory sense. But little need be said as to the word "Daisy." It certainly was not a word of plain meaning. There was an innuendo, which, if true, made it libelous, and its meaning was for the jury. Moreover, any ordinary reader would have inferred from the clause referring to the "first and only honorable act of her life," etc., that the plaintiff was habitually dishonest in her business dealings, and such a letter as this, written to one of her customers, was clearly actionable. The assignment to the charge does not comply with the Rule of Court.

PER CURIAM:

We will consider this case only as presented by the assignments of error. The first alleges that the court below erred in admitting in evidence the libelous letter, for the reason that "the handwriting and execution thereof by defendant not having been proven." Catharine Aspell, one of the plaintiffs, distinctly testified that she was familiar with the defendant's handwriting, and that the letter was his. Not only so, but

Opinion of the Court.

the defendant, when on the stand, identified the letter as his when it was shown to him. It was also identified by Mr. Orton, to whom it was addressed. More complete proof of the authorship could not well have been submitted.

The same objection was also made to the admission of the envelope. We need not discuss this, as the envelope was of no importance. The libel which was the subject of the contention was contained in the letter, not on the envelope.

The third and last assignment is entirely without merit. The learned judge did not charge that "the letter was on its face, per se, libelous." What he did say was this: "It is for you to determine from the letter what the writer intended by the language. If you determine he intended to reflect on her character; to intimate that the plaintiff was dishonest, or dishonorable, or indecent, then the paper is libelous, and it is your duty to find it so." The jury found the truth of the innuendoes, and whether rightfully or not, is not our province to determine. There is nothing in either assignment to raise the question whether the article was a libel per se.

It is proper to add to what has been said about the third assignment that it does not conform to the Rules of Court. Rule XXIII. provides that "when the error assigned is to the charge of the court, or to answers to points, the part of the charge or the points and answers referred to must be quoted totidem verbis in the specification." Instead of doing so, the third assignment gives, not the language of the court, but what the learned counsel supposed was its legal effect, in which as we have seen, he was entirely mistaken. No more apt illustration could be given of the wisdom of the rule, and its necessity.

Judgment affirmed.